## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

---

JANE DOE, a Connecticut resident; JOHN
DOE, a Connecticut resident; and J.D., a
Connecticut resident,

                Plaintiffs,

  v.

TANYA MASTOLONI (aka Tanya Romero),
a Connecticut resident; REBECCA
KESSLER (nee Wills), a Connecticut
resident; CHRISTOPHER ESPOSITO, a
California resident; LAURA SULLIVAN, a
Connecticut resident; AVON PUBLIC
SCHOOLS, a Connecticut public school
district,

                Defendants.

3:14-CV-00718 (CSH)

**January 28, 2016**

---

### RULING ON MOTIONS TO COMPEL

**HAIGHT,** Senior District Judge:

       Defendant Tanya Mastoloni has filed a motion [Doc. 105] pursuant to Fed. R. Civ. P. 37 to compel Plaintiffs to answer outstanding interrogatories and to produce documents previously demanded in pretrial discovery proceedings. Companion and virtually identical motions to compel discovery have been filed by Defendants Christopher Esposito [Doc. 103], Rebecca Kessler [Doc. 104], and Laura Sullivan [Doc. 106]. The issues have been briefed by counsel and were argued during a hearing before the Court on January 14, 2016. This Ruling resolves these four motions.

       This is a complicated and difficult case. The Plaintiffs are parents of three daughters

who attended the same high school.  The four individual Defendants, named above, taught or supervised the daughters during their years at the school.  Plaintiffs' complaint alleges that these individuals engaged in wrongful conduct directed at each daughter which violated the parents' & youngest daughter's  constitutional rights.  Plaintiffs also sue the school board.  Defendants deny all allegations of improper conduct in any respect.  The case is rife with fundamental issues of fact, extending over a number of years.  It is apparent that extended discovery must be accomplished before the case is ready for disposition, by motion or plenary trial.[1]

The present motion papers reveal two basic grounds upon which Plaintiffs resist the discovery requested by the individual Defendants.  *First*, Plaintiffs' counsel contends that certain Interrogatories impermissibly call upon Plaintiffs to give details with respect to each act or consequence alleged in the first amended complaint.  We may fairly refer to these as "Contention Interrogatories."  As to them, Plaintiff's counsel says that such inquiries "would more appropriately be addressed by way of deposition testimony," and "Interrogatories are only designed to list the basis facts of the case, not all the details."  Brief [Doc. 105-1] at 4–5.

*Second*, counsel refuses to identify or produce in discovery at this time contemporaneous documents in Plaintiffs' possession or control which are clearly relevant to claims or defenses in the case, because counsel prefers to withhold production until he has taken the depositions of the individual involved.  Disclosure at this time, counsel contends, "would undermine the impeachment value of Plaintiffs' evidence prior to the Defendants' depositions being taken."

---

[1] This Ruling is concerned solely with discovery disputes involving the four individual Defendants.  The Defendant school board, Avon Public Schools, is not involved in these motions.  The board has moved separately to dismiss the complaint against it.  That motion was also argued at the January 14 hearing, and is now *sub judice*.

Counsel continues:  "If Plaintiff is required to answer this Interrogatory, then Plaintiff should only be required to do so after the taking of Defendants' depositions."  Brief [Doc. 105-1] at 6.

Neither of these contentions justifies a withholding of proper discovery at this time. *First*, the Advisory Committee's Notes to the 2007 Amendment to F. R. Civ. P. 33 says tersely; "Opinion and contention interrogatories are used routinely."  The Notes recite that Rule 33 was amended to remove any implication that an interrogatory might be objectionable "merely for this reason."  To be sure, trial counsel in a given case may prefer to defer contention interrogatories until after depositions, or to eschew such interrogatories altogether, but that is a tactical decision for counsel to make, subject only to judicial review for abusive practices (which are not presented by the case at bar).  Defendants' Contention Interrogatories are proper and Plaintiffs must respond to them.

*Second*, one can perhaps understand why Plaintiffs' counsel would prefer to have the advantage of taking a Defendant's deposition testimony before disclosing documents (such as contemporaneous e-mails) which relate to events the testimony will cover.  But there is no justification for the Court to indulge counsel's tactical preference over the resistance of Defendants' counsel, who wishes prompt disclosure of considerable amounts of relevant evidence at this time.   F. R. Civ. P. 26(d) provides: "Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence."

The Rule's permissive flexibility echoes the spirit of Justice Douglas's opinion in *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958), where he said in praise of the Federal Rules: "Modern instruments of discovery serve a useful purpose," and "They together with

3

pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  It would be inconsistent with that spirit to allow Plaintiff to withhold disclosure of presently existing, relevant and discoverable evidence until an individual Defendant has been deposed, in the hope that a document could then be disclosed and flourished with the cry of "Gotcha!" (this Court's word, not Justice Douglas's).

Such a procedure would also run counter to the generally accepted concept of orderly discovery, in which  interrogatories and document discovery precede depositions of the parties or key witnesses.  That practice avoids or minimizes the risk of deposition interruptions while the witness considers a document not previously made a part of the record, or counsel defending the deposition has to deal with demands for production of documents referred to by the witness and not previously identified or produced.

Plaintiffs' Brief [Doc. 109] collects at 18-21 cases from other district courts, for the most part outside this circuit, which allowed a party to withhold from discovery a single artifact like a surveillance video tape until the deposition was taken of the adverse party, whose movements were recorded in the tape.  Such decisions do not furnish useful guidelines for the case at bar, where Plaintiffs seek to withhold from discovery large numbers of relevant documents for the essentially speculative reason that some documents might be useful to impeach a witness being deposed on a particular point.  The speculative or conclusory nature of counsel's position is not altered by his professed perception that individual defendants lied at one point or another during earlier stages of the case.   Counsel for those Defendants vigorously reject those suggestions of false statements.  The incidents in question simply take their place in the myriad disputed issues

4

of fact presented by the case.

Moreover, the single artifact - impeachment concept embraced by other courts did not find favor with Magistrate Judge Smith of this Court in *Jerolimo v. Physicians for Women, P.C.,* 238 F.R.D. 354 (D.Conn. 2006).  Judge Smith rejected a request that discovery of a surreptitious tape recording of a crucial meeting be delayed until a party participant was deposed, on the theory that "the party whose statements have been recorded will have a propensity to fabricate evidence or lie during the course of his or her testimony."  *Id*. at 357.  That is the theory Plaintiffs advance in this case.  Judge Smith reasoned that "there is no basis for treating the recorded statements any differently from prior written documents or other records which would be discoverable as of right under Rule 26(b)(3)."  *Id*.

As an additional ground for decision, Judge Smith held that "the disclosure of the tape recording and corresponding transcript is made even more necessary by the likelihood that they will be used as substantive evidence, rather than merely impeachment evidence." *Id*.  He concluded that "to the extent the substantive value of the recorded evidence outweighs its impeachment value, a court should not delay its production pending the taking of a deposition." 238 F.R.D. at 357.  That reasoning resonates in the case at bar, since much of the evidence Defendants seek to discover from Plaintiffs is of a nature that would be expected to yield substantive evidence admissible at trial.

I cannot accept the proposition, implicit in Plaintiffs' refusal to produce this evidence until Defendants have been deposed, that production now would prevent effective impeachment of the  individuals at their depositions later.  Counsel for Plaintiffs is too modest about his skill as a cross-examiner of a hostile witness (as the individual Defendants would surely prove to be).

5

Documents like e-mails, text messages, letters and diaries are created in the moment, typically without contemplation of anyone suing anyone else (that happens much later).  Such a document says what it says.  Its author moves on, cautioned by the poet that "nor all your piety nor wit shall lure it back to cancel half a line, nor all your tears wash out a word of it."[2]  If a factual account given by a Defendant during her deposition testimony is belied or contradicted by contemporaneous documents, Plaintiffs' counsel can use that evidence to impeach the mendacious testimony, whether or not the impeaching evidence was produced in discovery prior to the deposition.  Conceptually, one might suppose, it is possible that the witness's foreknowledge of such evidence would inhibit her or him from giving perjured or misleading testimony in the first place (a salutary effect which all would applaud in principle, although the tenor of exchanges in this case indicates that Plaintiffs' counsel places little faith in the possibility).  But I need not expand further on these reflections.  I am satisfied that the circumstances in the case do not justify a departure from the ordinary course of pretrial discovery.

I have considered the submissions of counsel, and am unable to discern any interrogatories or demands for production which should be withheld from discovery by Plaintiff s pending depositions of the individual Defendants, or which need not be responded to for any other reason.   In consequence, Defendants' motions to compel discovery [Docs. 103, 104, 105 and 106] are, and each of them is, GRANTED.

Rule 37(a)(5)(A) provides that if a motion to compel discovery is granted (as these motions have been), "the court must . . . require the party" whose conduct "necessitated the

---

[2] *The Rubaiyat of Omar Khayyam*, st. 71.

motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  The Defendants at bar do not include in their papers a demand for expenses, but the rule is cast in mandatory terms and the Court must consider the question.  Having done so, I will not order payment of Defendants' motion expenses.  Rule 37 (a)(5)(A)(ii) and (iii) provide that "the court must not order this payment" if the opposing party's nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust."  Although Plaintiffs did not prevail on their principal basis for nondisclosure (the impeachment factor), some decisions arguably favored Plaintiffs, and the question was close enough to leave the parties bearing their own expenses.

All the foregoing is SO ORDERED.

Dated:   New Haven, Connecticut
          January 28, 2016


                                                    /s / Charles S. Haight
                                                 CHARLES S. HAIGHT, JR.
                                                 Senior United States District Judge

7